IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

MATTHEW FORD,                    *

    Plaintiff,               *

vs.                              *      CASE NO. 4:18-CV-8 (CDL)

SYNOVUS BANK,                    *

    Defendant.               *

O R D E R

Matthew Ford brought this action against his former employer, Synovus Bank ("Synovus").[1] He claims Synovus interfered with his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and retaliated against him for exercising those rights. He also claims Synovus discriminated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Synovus moved for summary judgment (ECF No. 7). For the following reasons, Synovus's motion is granted.

---

[1] Ford's Complaint named "Synovus Financial Corporation" as the only defendant. Ford's employer, however, was Synovus Bank, a wholly owned subsidiary of Synovus Financial. Ford moved to amend his complaint to add Synovus Bank as a defendant and remove Synovus Financial. Synovus Financial does not oppose. *See* Def.'s Reply Br. in Supp. of Def.'s Mot. for Summ. J. 1-2 n.1, ECF No. 19. Therefore, Ford's motion to amend (ECF No. 16) is granted. The Court's references to "Synovus" in this Order refer to Synovus Bank.

1

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Ford, the record reveals the following facts:

I. **Ford's Medical Condition**

Ford has an autoimmune disorder known as aphthous stomatitis. When his condition "flares up," Ford suffers from painful oral ulcers. During a flare-up, Ford may have as many as twenty ulcers in his mouth. His flare-ups may last from a few weeks to six months. His flare-ups also cause other symptoms, including a low-grade fever, muscle pains and aches, joint pains, and a generalized feeling of being unwell. Sometimes, Ford's flare-ups are so severe

2

that he is bedridden.  Ford's physician prescribed Vicodin for his flare-ups and advised him not to drive when taking the medication.

**II.  Ford's Position at Synovus**

In December 2013, Ford applied for the position of "customer care coordinator" at Synovus.  When Ford applied, he did not tell Synovus about his ulcer condition.  Synovus hired Ford, and Ford started work in March 2014.  His responsibilities included handling customer issues via email, online submission, or phone calls. Ford later moved into the new role of "card services support specialist."  In this position, he handled Synovus's credit card portfolio, including collections, fraud, analytics, and performance.

As a card services support specialist, Ford worked at a cubicle in an open area.  He shared a community printer with other Synovus employees in different departments.  He had access to confidential financial information, including names, social security numbers, transaction histories, and credit card numbers of Synovus's customers. Employees needed a security badge to enter the building where Ford worked.  Ford had one co-worker, Terrie James.  He and James reported to Chris Eskue.  He, James, and Eskue exclusively performed Synovus's fraud and collections work.

**III. Ford's FMLA Leave Requests**

During the latter part of 2015 and early 2016, Ford's flare-ups worsened.  He consulted with Eskue, who advised him to speak

3

with someone in Synovus's human resources department. Ford then spoke with a Synovus human resources employee named Daniel Steele. Steele Aff. ¶ 7, ECF No. 7-2. Steele advised Ford to submit paperwork for "intermittent" FMLA leave. *Id*. Ford submitted his paperwork and then exercised intermittent FMLA leave in 2015 and 2016.

At some point in 2016, Ford made a request to work from home during his more severe medical flare-ups. In July 2016, Steele wrote Ford's physician, Dr. Linda Chin, to acquire more information about Ford's condition. *See* Letter from D. Steele to L. Chin (July 26, 2016), ECF No. 12-1 at 2. Dr. Chin told Steele that Ford was "quite capable" of performing the essential functions of his position. *See* Letter from L. Chin to D. Steele (Aug. 9, 2016), ECF No. 12-1 at 4. Dr. Chin noted that Ford sometimes required pain medications for his condition and that Ford had been advised against driving while taking his medication. *Id*. She likewise suggested that Ford be allowed to work from home during flare-ups that required pain medication therapy. *Id.; see also* Steele Aff. ¶ 8; Steele Dep. 9:3-16, ECF No. 12 (explaining that Steele became aware of Ford's request to work from home sometime in 2016); Ford Dep. 89:13-90:12, ECF No. 9 (describing Ford's interactions with Steele).

None of the employees in Ford's department were allowed to work from home because of the sensitive nature of the information

they accessed. Eskue Aff. ¶ 5, ECF No. 7-3. Synovus employees like Ford could not be given remote access because Synovus's system contains "confidential and proprietary information including customer names, account numbers, account information, debit or credit card numbers, and similar information." *Id.* ¶ 7. Allowing employees to have remote access to work from home jeopardizes the security of Synovus's confidential data and could potentially expose the data to the public. *Id.* ¶ 8.

When Ford did not hear back from Steele by September about his request to work from home, he called Steele. Ford Dep. 90:4-12. Steele told Ford that no accommodations would be made for his condition and that Ford could not work from home. *Id.* at 90:13-17; Steele Aff. ¶¶ 9-10. Other than speaking to Dr. Chin and Eskue, Steele made no other investigation into reasonable accommodations for Ford. Steele Dep. 24:12-21. Steel was unaware of any accommodation request by Ford other than to work from home. Steele Aff. ¶ 10.

IV. **Ford's Termination**

Ford continued to exercise intermittent FMLA leave even after Synovus denied his request to work from home. Ford took FMLA leave on November 3, 2016. The next day, a Synovus employee named Jarrett Cudd, who worked at the same facility as Ford, reported to Synovus security that someone had tried to take a picture of him while he was using the restroom. Cudd testified that while he was

5

using the urinal, he saw a cellphone start to slide underneath the divider between the urinal and the toilet stall. He saw the camera side of the phone coming out very slowly from just underneath the bottom of the divider. Cudd Dep. 21:2-6, ECF No. 10. Cudd said something like "look out" or "what's up." The phone then quickly disappeared, and Cudd left the restroom. *Id*. at 21:7-10. He then approached a coworker with a direct line of sight to the restroom and asked her to watch the door to see who comes out. *Id*. at 21:10-14. He also called security. *Id*. at 21:14-15.

Cudd's coworker saw someone exit the restroom. She gave security a description of the person. Security then walked in the direction where the person headed after exiting the restroom to see if they could find anybody matching the description. *Id*. at 21:25-22:3. Security determined that Ford matched the description. Security then took the coworker through the area to corroborate the identification, which she did. *Id*. at 22:3-6.

Steele investigated the incident. After meeting with Cudd to discuss the incident, Steele discussed the allegations with Ford and Eskue. Steele Dep. 35:14-19. Steele and Eskue believed that Ford's explanation changed over time. *Id*. at 36:4-37:3; Eskue Aff. ¶ 13. According to Steele, Ford first denied the incident, then said he often drops his phone, and then said he might have missed his pocket and accidentally put his phone under the stall. Steele Aff. ¶ 13. Because of the changing story, Steele did not

6

believe Ford's explanation and determined he should be terminated. *Id*. ¶ 14. Ford, however, denied that he was involved in the restroom incident and denied that his story changed. Ford Dep. 105:10-106:13; 141:13. Ford also offered Steele his phone to search, but Steele declined because he was unsure of the privacy implications. Steele Dep. 37:4-15. Synovus did not contact law enforcement about the incident. Synovus then terminated Ford, and Ford subsequently brought this action.

DISCUSSION

Ford's Complaint asserts the following three claims against Synovus: (1) FMLA interference; (2) FMLA retaliation; and (3) ADA discrimination. Synovus moved for summary judgment on all Ford's claims. The Court addresses each claim below.

I. **FMLA Interference Claim**

Ford pointed to no evidence that Synovus ever actually denied or interfered with his exercise of intermittent FMLA leave while he was employed. Ford instead contends that Synovus interfered with his FMLA rights by terminating him. This claim is duplicative of his FMLA retaliation claim. Therefore, Ford's FMLA interference claim is dismissed. *See Hawkins v. BBVA Compass Bancshares, Inc.*, 613 F.App'x 831, 840-41 (11th Cir. 2015) (per curiam) (affirming district court's conclusion that FMLA interference claim premised on plaintiff's termination was "largely a clone" of retaliation claim and should be dismissed).

**II. FMLA Retaliation Claim**

Summary judgment is likewise proper on Ford's FMLA retaliation claim. Ford pointed to no direct evidence of retaliation. Therefore, his claim is subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001) (applying *McDonnell Douglas* to FMLA retaliation claim). Under that familiar framework, Ford must first establish a prima facie case, thus creating a rebuttable presumption of retaliation. The burden then shifts to Synovus to proffer legitimate, non-retaliatory reasons for Ford's termination. If it does so, the burden then returns to Ford to point to evidence that Synovus's proffered reasons are pretext for unlawful retaliation.

For purposes of this Order, the Court assumes Ford can establish a prima facie case.[2] Synovus proffered the restroom incident as a legitimate, non-retaliatory reason for terminating Ford and contends Ford cannot show that it was pretext. To survive summary judgment, Ford must demonstrate "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason[] for

---

[2] Synovus argues Ford cannot establish the required causal relationship between his exercise of FMLA rights and his termination. Because the Court concludes that Ford cannot show pretext, the Court does not address this argument.

8

its action that a reasonable factfinder could find [it] unworthy of credence.'" *Ezell v. Wynn*, 802 F.3d 1217, 1227 (11th Cir. 2015) (quoting *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). Therefore, the question here is whether Steele honestly believed Ford was involved in the restroom incident.

Ford argues that a jury could conclude the restroom incident was pretext based on the following: Cudd never named Ford as the person in the restroom, Cudd did not stay in or outside the restroom to confront the photographer, Cudd did not leave work after the incident, Cudd admitted Ford could have been mistakenly identified, Steele did not investigate Ford's phone, Ford had no prior history of similar misconduct, and Synovus never contacted law enforcement. Ford also testified that, according to him, his story did not change. In essence, Ford takes issue with the outcome of Steele's investigation and the conclusion Steele reached after speaking to Cudd and Ford. Ford thinks Synovus should have done more to confirm he left the restroom after Cudd. But Ford's disagreement with and criticisms of Steele's investigation do not suggest that Steele did not actually believe

Ford was the perpetrator. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason."); *Sapp v. U.S. Attorney Gen.*, 676 F. App'x 878, 882 (11th Cir. 2017) (per curiam) ("Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions." (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244 (11th Cir. 2001))). Therefore, Synovus's motion for summary judgment on Ford's FMLA retaliation claim is granted.

**III. ADA Discrimination Claims**

Ford also contends Synovus discriminated against him because of his disability by failing to apply the progressive discipline policy after the restroom incident, terminating his employment, and refusing to permit him to work from home. Ford offered no argument in support of his claim that failure to use progressive discipline amounts to disability discrimination. Therefore, that claim has been abandoned. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc). And, as explained above, Ford cannot overcome Synovus's legitimate, non-discriminatory reason for his termination. Therefore, his ADA claim based on his termination also fails.[3] Consequently, Ford's

---

[3] To the extent Ford seeks to assert an ADA retaliation claim based on his termination, it fails for the same reason.

only remaining ADA claim is a "failure to accommodate" claim for refusing to permit him to work from home.

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007). For purposes of this analysis, the Court assumes Ford can establish the first two elements of his claim.[4] The remaining issue, therefore, is whether Synovus discriminated against him because of his disability.

Discrimination under the ADA includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual" unless the individual's employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). A plaintiff, however, is "not entitled to the accommodation of [his] choice, but only to a reasonable accommodation." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) (quoting *Lewis*

---

[4] Synovus argues that Ford is not disabled because his ulcer condition only interferes with his ability to drive to work, not to perform his job. Ford contends he was disabled because the condition impaired his ability to communicate. Because the Court concludes Ford cannot demonstrate his requested accommodation was reasonable, it does not need to address this argument.

11

*v. Zilog, Inc.*, 908 F.Supp. 931, 948 (N.D. Ga. 1995)). Ford "need only show that an 'accommodation seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *U.S. Airways v. Barnett*, 535 U.S. 391, 401 (2002). Synovus must then show "special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id*. at 402. The Eleventh Circuit, however, has "previously held that 'the ADA does not require [the employer] to eliminate an essential function of [the plaintiff's] job." *Holly*, 492 F.3d at 1262 n.16 (alterations in original) (quoting *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000)). "In other words, an accommodation that does not enable the employee to perform an essential function of his position is facially unreasonable and is not required by the ADA," notwithstanding the Supreme Court's statement in *Barnett*. *Id*.

Here, Ford's only requested accommodation was to work from home. Synovus contends that the essential functions of Ford's job required accessing confidential financial information for its customers and that permitting remote access to that information would jeopardize security. Ford does not meaningfully dispute this contention.[5] His argument instead appears to be that because

---

[5] Ford appears to argue that he only accessed confidential information as a "customer care coordinator" and not as a "card services support specialist." This contention is unsupported by Ford's deposition. *See* Ford Dep. 71:20-25 (acknowledging Ford had access to confidential information as a card services support specialist).

12

other Synovus employees sometimes worked from home, his request to work from home was reasonable. But he testified only generally that other employees (whose names he could not recall) had remote access on some days. Ford Dep. 75:21-76:9. He pointed to no evidence that Synovus permitted card support specialists like Ford to work remotely.[6] Ford's speculative testimony is insufficient to meet his burden of showing a reasonable accommodation that permits him to perform the essential functions of his job. Synovus's motion for summary judgment on this ground is therefore granted.[7]

Ford further argues that his failure to accommodate claim should proceed because Synovus "summarily rejected requests for accommodation." Pl.'s Resp. to Def.'s Mot. for Summ. J. 10, ECF No. 17. Therefore, Ford contends Synovus is liable for failing to engage in the "informal, interactive process" required by the ADA to determine what, if any, accommodations to provide a disabled employee. *See* 29 C.F.R. § 1630.2(o)(3) ("To determine the

---

[6] In fact, Ford testified he could not recall whether James, the only other card services support specialist, had remote access. Ford Dep. 78:11-14.

[7] The Court further concludes that Synovus has carried its burden to demonstrate that permitting Ford to work from home would be an "undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A). Ford points to his use of a community printer and shared workspace as evidence that the information he accessed was not confidential. But each of Ford's coworkers required a badge to enter his building and used company hardware to access the data. This evidence simply does not dispute that Ford's remote access to confidential data would jeopardize Synovus security.

appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."). But "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant." *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) (per curiam). Accordingly, the Eleventh Circuit does not recognize the claim Ford seeks to assert. *Id.*; *see also Moses v. Am. Nonwovens, Inc.*, 97 F.3d 446, 448 (11th Cir. 1996) (per curiam) (expressing confidence that the ADA "does not mandate a pretermination investigation"). Therefore, to the extent Ford asserts a claim based on Synovus's failure to investigate his requested accommodation or to engage in an interactive process with him to determine an appropriate accommodation, summary judgment is proper on that claim.

## CONCLUSION

For the above reasons, Synovus's motion for summary judgment (ECF No. 7) is granted. The Clerk shall enter judgment in favor of Synovus.

IT IS SO ORDERED, this 13th day of December, 2018.

<pre>                              S/Clay D. Land
                              _____
                              CLAY D. LAND
                              CHIEF U.S. DISTRICT COURT JUDGE
                              MIDDLE DISTRICT OF GEORGIA</pre>